CHRYSLER CORPORATION ET AL. *v.* UNITED STATES.

No. 1036.  Argued May 1, 4, 1942.—Decided June 1, 1942.

*Mr. Nicholas Kelley,* with whom *Messrs. William Stanley* and *William D. Donnelly* were on the brief, for appellants.

*Mr. Albert Holmes Baldridge* argued the cause, and *Solicitor General Fahy, Assistant Attorney General Arnold,* and *Mr. Charles H. Weston* were on the brief, for the United States.

Mr. Justice Byrnes delivered the opinion of the Court.

On May 27, 1938, an indictment was returned against appellants (referred to hereafter as Chrysler) and Commercial Credit Company and certain subsidiaries of the latter in the District Court for the Northern District of Indiana. Two similar indictments were returned on the same day, one against Ford Motor Company and certain finance companies affiliated with it, and the other against General Motors Corporation and General Motors Acceptance Corporation, its subsidiary. The gist of each of these indictments was that the automobile manufacturer had combined and conspired with its affiliated finance company or companies to restrain trade and commerce in the wholesale and retail sale and financing of its automobiles, in violation of the Sherman Act.[1]

During the ensuing months, Chrysler and Ford reached an agreement with the Government that the indictments against them would be quashed and consent decrees entered. Consequently, on November 7, 1938, bills of equity were filed against Chrysler and Ford, praying for injunctions against the acts complained of. Answers were filed,[2] and on November 15, 1938, the consent decrees were entered.

The lengthy decree against Chrysler need not be described in detail.[3] Paragraph 6 imposed numerous specific restraints upon discriminatory practices by Chrysler in favor of Commercial Credit Company. Paragraph 7 imposed correlative restraints upon Commercial Credit Company in its dealings with Chrysler. Paragraph 12A

---

[1] 26 Stat. 209, 15 U. S. C. § 1.

[2] Chrysler's answer included an allegation that it had completely terminated its affiliation with Commercial Credit Company by February, 1938.

[3] The consent decree against Ford is substantially the same.

contained alternative provisions depending upon the outcome of the then still pending criminal proceedings against General Motors. It provided: (1) that if those proceedings should not result in conviction, every provision of this consent decree against Chrysler should be suspended until such time as a substantially identical decree should be obtained against General Motors; or (2) that upon conviction of General Motors in the criminal proceedings, or upon the entry of a decree in a civil action against General Motors, or upon January 1, 1940—whichever should occur first—Chrysler should be free of all restraints imposed by paragraph 6, to the extent that substantially identical restraints had not been imposed upon General Motors by the verdict of guilty, or by the civil decree, and until such restraints were imposed.

The question before us concerns paragraph 12, which is separate and distinct from paragraph 12A. Paragraph 12 forbade Chrysler to "make any loan to or purchase the securities of" Commercial Credit Company or any other credit company. It then provided:

"It is an express condition of this decree that notwithstanding the provisions of the preceding paragraph of this paragraph 12 and of any other provisions of this decree, *if an effective final order or decree not subject to further review shall not have been entered on or before January 1, 1941,* requiring General Motors Corporation permanently to divest itself of all ownership and control of General Motors Acceptance Corporation and of all interest therein, then and in that event, nothing in this decree shall preclude the manufacturer [Chrysler] from acquiring and retaining ownership of and/or control over or interest in any finance company, or from dealing with such finance company and with the dealers in the manner provided in this decree or in any order or modification or suspension thereof entered pursuant to paragraph 12a . . ." Italics added.

Affiliation between Chrysler and Commercial Credit Company, or another finance company, was thus singled out for special treatment in paragraph 12. The various restraints imposed by paragraphs 6 and 7 were subject to termination upon the contingencies described in paragraph 12A, but the prohibition against affiliation was subject to expiration upon the distinct and different contingency described in paragraph 12, *viz.*, the entry of "an effective final order or decree not subject to further review . . . on or before January 1, 1941, requiring General Motors Corporation permanently to divest itself of all ownership and control of General Motors Acceptance Corporation and of all interest therein . . ."

Jurisdiction of the cause was retained by the District Court, in paragraph 14, for the purpose of enabling the parties to apply at any time "for such further orders and directions as may be necessary or appropriate in relation to the construction of or carrying out of this decree" or "for the modification thereof."

The criminal proceedings against General Motors resulted in conviction of the corporation on November 17, 1939. General Motors appealed to the Circuit Court of Appeals for the Seventh Circuit. On May 1, 1941, that Court affirmed the conviction and on July 2, 1941, denied rehearing. 121 F. 2d 376. A petition for certiorari was denied on October 13, 1941, 314 U. S. 618. A petition for rehearing was denied on November 10, 1941, 314 U. S. 710.

Meantime, a civil suit for an injunction had been instituted by the Government against General Motors on October 4, 1940 in the District Court for the Northern District of Illinois. On October 26, 1940, the Government agreed to an extension of time to answer to January 20, 1941. This extension of time rendered it impossible for the Government to obtain "an effective final order or decree" against General Motors before January 1, 1941, as

required by paragraph 12 of the consent decree against Chrysler. Accordingly, on December 17, 1940, the Government filed a motion in the District Court in Indiana asking that paragraph 12 of the consent decree against Chrysler be modified by substituting "January 1, 1942" for "January 1, 1941." Chrysler opposed this motion, but on December 21, 1940 an order was entered changing the date as requested. Chrysler appealed to this Court from the order of modification, but the appeal was dismissed on December 8, 1941 for want of a quorum of Justices qualified to sit, 314 U. S. 583, and on January 5, 1942 rehearing was denied, 314 U. S. 716.

Pursuant to additional stipulations between the Government and General Motors, the time to answer the Government's complaint in the civil suit in the Illinois District Court was successively extended to January 27, 1941, to May 1, 1941, to June 15, 1941, and to June 21, 1941. On the latter date, the Government filed an amended complaint. By agreement, the time in which to answer this amended complaint was extended to July 15, 1941. General Motors then sought a further extension of time to answer the amended complaint, urging that the civil suit should be postponed pending a final determination of the criminal case and that it was about to petition for a writ of certiorari in the criminal case. The Government refused to agree to an extension, stating that any further delay might prejudice the Government in connection with its consent decree against Chrysler. The District Court nevertheless entered an order for an indefinite extension of the time in which General Motors might answer the amended complaint. On December 1, 1941, the Government moved the District Court to set a day certain by which General Motors would be required to answer and otherwise plead. In the motion and in an accompanying affidavit, the Government explained the connection be-

tween the consent decree against Chrysler and the civil suit against General Motors. After a hearing on the motion, the District Court set January 15, 1942, as the date by which General Motors would be required to answer.

The date fixed by the last mentioned order of the District Court in Illinois in the suit against General Motors created further difficulty with respect to the consent decree in the Chrysler case in the District Court of Indiana. It had now become impossible for the Government to obtain "an effective final order or decree" against General Motors, within the meaning of paragraph 12 of the Chrysler consent decree, prior to January 1, 1942. On December 22, 1941, therefore, the Government moved the District Court in Indiana for a second modification of paragraph 12 of the Chrysler consent decree by substituting "January 1, 1943" for "January 1, 1942." In its answer Chrysler opposed the modification. The Government offered in evidence a transcript of the proceedings in the civil suit against General Motors. Hearing on the motion was continued to February 16, 1942. On that date no additional evidence was introduced, but argument of counsel was heard.

The District Court thereupon made the following findings of fact: (a) that the District Court had specifically retained jurisdiction to modify the consent decree; (b) that paragraph 12 was "framed upon the basis that the ultimate rights of the parties thereunder should be determined by the Government's civil antitrust proceedings against General Motors Corporation and affiliated companies"; (c) that "time was not of the essence with respect to lapse of the bar against affiliation [between Chrysler and Commercial Credit Company or any other finance company]"; (d) "that to safeguard defendants against undue delay in such proceedings the decree provided for suspension of certain of its prohibitions in the event con-

victions were not obtained in the criminal case against General Motors Corporation by January 1, 1940"; (e) "that the decree provided for a termination of the bar against affiliation, if the civil proceedings against General Motors Corporation were not successfully concluded by a court of last resort by January 1, 1941"; (f) that a conviction had been obtained in the criminal proceedings against General Motors on November 17, 1939; (g) "that the Government has proceeded diligently and expeditiously in its suit to divorce General Motors Acceptance Corporation from General Motors Corporation"; and (h) "that further extension of the bar against affiliation will not impose a serious burden upon defendants." It then concluded as a matter of law "that the purpose and intent of the decree will be carried out if Chrysler is given the opportunity at any future time to propose a plan for the acquisition of a finance company, and to make a showing that such plan is necessary to prevent Chrysler Corporation from being put at a competitive disadvantage during the pendency of complainant's civil litigation against General Motors Corporation, et al."

Upon the basis of these findings and conclusions, the District Court entered an order modifying paragraph 12 by changing the date to January 1, 1943, in compliance with the Government's motion. The case is before us on direct appeal from this order. 15 U. S. C. § 29, 28 U. S. C. § 345.

It is clear that under paragraph 14 of the original decree the District Court had jurisdiction to modify it. The question is whether the change in date in paragraph 12 amounted to an abuse of this power to modify. We think that the test to be applied in answering this question is whether the change served to effectuate or to thwart the basic purpose of the original consent decree. *United States* v. *Swift & Co.*, 286 U. S. 106.

The text of the decree itself plainly reveals the nature of that purpose. It was, as stated in the District Court's findings, "that the ultimate rights of the parties thereunder should be determined by the Government's civil antitrust proceedings against General Motors Corporation and affiliated companies." The time limitation was inserted to protect Chrysler from being placed at a competitive disadvantage in the event that the Government unduly delayed the initiation and prosecution of the General Motors injunctive proceedings. The District Court found "that the Government has proceeded diligently and expeditiously in its suit to divorce General Motors Acceptance Corporation from General Motors Corporation." There is room for argument that this statement is markedly generous to the Government, inasmuch as the civil suit against General Motors was not instituted until almost two years after the entry of the consent decree and only three months prior to the limiting date in paragraph 12. But the finding is supported by several circumstances: the extended course of the appeals in the criminal proceedings against General Motors, for which the Government was not responsible; the obvious bearing of the results in that litigation upon the method of handling the civil litigation with General Motors; and the ruling of the District Court in Illinois in July, 1941, in the General Motors civil action, indefinitely extending the time to answer despite the Government's objection, presumably to await the final disposition of the criminal case. In view of these considerations, the finding of the court below was not unreasonable, and we do not think that the Government lost its right to seek a modification of the decree.

The controlling factor thus becomes whether the extension of the ban on affiliation contained in paragraph 12 places Chrysler at a competitive disadvantage. Chrysler made no showing to that effect in the District Court. The

order of December 21, 1941 set the hearing for February 16, 1942, with the explanation that Chrysler had "requested a continuance in order to produce further evidence." But on February 16 no evidence was forthcoming. The record therefore reveals that Chrysler terminated its affiliation with Commercial Credit in 1938 before the consent decree was entered, and does not reveal that it has since asserted any desire or intention to affiliate with Commercial Credit or with any other finance company. Moreover, we cannot be blind to the fact that the complete cessation of the manufacture of new automobiles and light trucks has drastically minimized the significance of the competitive factor.[4] Consequently there is no warrant for disturbing the finding of the court below "that further extension of the bar against affiliation will not impose a serious burden upon defendants." If Chrysler desires to affiliate with a finance company and feels that its inability to do so places it at a disadvantage with its competitors, it should make such a showing to the District Court. That court expressly declared that Chrysler was free at any time to propose a plan for affiliation and to demonstrate that such a plan is necessary to avoid unfairness.

*Affirmed.*

MR. JUSTICE ROBERTS, MR. JUSTICE MURPHY and MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

MR. JUSTICE FRANKFURTER, dissenting:

In the spring of 1938 the Government instituted criminal proceedings against the three leading automobile manufacturers, Chrysler, Ford, and General Motors. For pres-

[4] See the order of January 21, 1942, of the Director of Priorities of the Office of Production Management. F. R. Docs. 41–636, 42–637, 7 F. R. 473.

ent purposes, Ford may be disregarded. Each indictment charged violation of the Sherman Law arising out of the manufacturer's affiliation with a finance company and its employment of certain trade practices. Chrysler was prepared to consent to a decree prohibiting it from affiliation with any finance company, in addition to its acceptance of restraints against alleged illegal trade practices, provided, however, that the Government succeeded in obtaining similar relief against General Motors. The problem before the negotiators of the consent decree was, therefore, that of determining how long Chrysler should remain subject to the restraints imposed by the decree while General Motors, contesting the claims of the Government, refused to come to terms with it and put it to its law. As the Government recognizes in its brief here, Chrysler was "entitled to protection against undue delay in the prosecution of the proceedings against General Motors." With respect to the prohibition against affiliation, the problem was solved by providing in paragraph 12 that if the Government should not have obtained a final decree against General Motors by January 1, 1941, requiring General Motors to divest itself of all interest in its affiliated finance company, the prohibition against Chrysler would cease. This was made an "express condition" notwithstanding any other provisions in the decree.[1] Obviously, it was an essential feature of the consent

---

[1] The full text of Paragraph 12 is as follows:

"The Respondent Finance Company shall not pay to any automobile manufacturing company and the Manufacturer shall not obtain from any finance company any money or other thing of value as a bonus or commission on account of retail time sales paper acquired by the finance company from dealers of the Manufacturer. The Manufacturer shall not make any loan to or purchase the securities of Respondent Finance Company or any other finance company, and if it shall pay any money to Respondent Finance Company or any other finance company with

decree against Chrysler that the prohibition of affiliation with the finance company should result in this great competitive disadvantage only long enough to enable the Government to press its claim against General Motors to successful conclusion with all reasonable speed. The parties might have refrained from fixing any definite period, leaving the matter wholly for determination in the future and by undefined standards of reasonableness. Instead, the Government chose to specify with particularity the length of the period—more than two years—in which Chrysler would be required to bear competitive hardships resulting

the purpose or effect of inducing or enabling such finance company to offer to the dealers of the Manufacturer a lower finance charge than it would offer in the absence of such payment, it shall offer in writing to make, and if such offer is accepted it shall make, payment upon substantially similar bases, terms and conditions to every other finance company offering such lower finance charge; provided, however, that nothing in this paragraph contained shall be construed to prohibit the Manufacturer from acquiring notes, bonds, commercial paper, or other evidence of indebtedness of Respondent Finance Company or any other finance company in the open market.

"It is an express condition of this decree that notwithstanding the provisions of the preceding paragraph of this paragraph 12 and of any other provisions of this decree, if an effective final order or decree not subject to further review shall not have been entered on or before January 1, 1941, requiring General Motors Corporation permanently to divest itself of all ownership and control of General Motors Acceptance Corporation and of all interest therein, then and in that event, nothing in this decree shall preclude the Manufacturer from acquiring and retaining ownership of and/or control over or interest in any finance company, or from dealing with such finance company and with the dealers in the manner provided in this decree or in any order of modification or suspension thereof entered pursuant to paragraph 12a. The Court, upon application of the respondents or any of them, will enter an order or decree to that effect at the foot of this decree, and the right of any respondent herein to make the application and to obtain such order or decree is expressly conceded and granted."

from the lack of the same restraints upon General Motors.

Considering the scope and nature of the decree, the interests, both public and private, with which it was dealing, and its technical draftsmanship, there can be no doubt that the precise limits of paragraph 12 were not casually or carelessly defined. Of course, the District Court had the power to modify the consent decree in order to effectuate its basic purposes. The fact that the decree embodied the agreement of the parties no more limited the power of the court than if it had been a contested decree. *Swift & Co.* v. *United States*, 276 U. S. 311; *United States* v. *Swift & Co.*, 286 U. S. 106, 114; *United States* v. *International Harvester Co.*, 274 U. S. 693. The decree itself contains an express recognition of the court's power of modification, but such a reservation plainly added nothing to the decree and subtracted nothing from the significance of terms made an express condition of the imposed restraint. The burden was still, as it always is, on the moving party—and here it was the Government—to show that circumstances justified a change in such terms. In fact, on December 17, 1940, within three weeks of the expiration of the restraint against Chrysler, the Government sought for an extension of that restraint for another year upon the grounds that the time "was by mistake of the parties underestimated." The extension was opposed, but granted by the District Court. An appeal was brought here but was dismissed on December 8, 1941, "for want of a quorum of Justices qualified to sit." *Chrysler Corporation* v. *United States*, 314 U. S. 583. A week later, the present proceedings were begun for a further extension. The effect of the modification sought by the Government and granted by the court below was to extend until January 1, 1943, the restrictions upon Chrysler's freedom of action which were not imposed upon its principal rival.

In order to justify a modification having such drastic business consequences, it was surely incumbent upon the Government to show that it had proceeded with all deliberate speed against General Motors. The record reveals that no such showing was made. The history of the litigation against General Motors proves that it could not have been made. Although the consent decree against Chrysler was entered on November 15, 1938, the trial in the criminal action against General Motors was not begun until October 9, 1939. This trial resulted in a conviction against General Motors on November 17, 1939. Since the trial judge did not instruct the jury that affiliation as such was unlawful, and indeed the contrary, the criminal proceeding could no longer be claimed to control the validity of the affiliation prohibited by paragraph 12 of the Chrysler decree. Consequently, it is irrelevant that the criminal proceedings against General Motors were not finally concluded until this Court denied certiorari on October 13, 1941. But, in any event, the contingencies of review of a criminal conviction do not justify holding in abeyance an equity suit, even though it concerns a related issue, when the determination of that equity suit within a time certain, to wit, January 1, 1941, explicitly defined the duration of the restraint imposed upon Chrysler. The appeal of the criminal conviction against General Motors was at last disposed of in the Circuit Court of Appeals on May 1, 1941. 121 F. 2d 376. But even then the Government did nothing to press the equity suit, indeed it promoted its further delay.

It was not until October 4, 1940, that the Government brought a civil suit in equity against General Motors. This was almost two years after the entry of the decree against Chrysler, and, perhaps more important, less than three months before the date upon which the bar against

Chrysler was to be lifted. Here again the record contains nothing to explain this period of inaction, when, by the express terms of the decree, the duty of action was laid upon the Government and the result of such action was of obvious business importance to the status of Chrysler under its decree. Nor does the record show that the Government undertook to prevent any untoward delays in the determination of the General Motors civil suit. On the contrary, no less than six times did the Government agree to extensions of the time within which General Motors should plead. On October 26, 1940, the Government acquiesced in an extension to January 20, 1941; on January 16, 1941, in an extension to January 27, 1941; on January 24, 1941, in an extension of more than three months, to May 1, 1941; on April 21, 1941, in a further extension to June 15, 1941; and on June 13, 1941, in an additional extension to June 21, 1941. On that date, the Government filed an amended complaint, and on June 28, 1941, it agreed to a further extension to July 15, 1941. On the latter date, General Motors requested the court that it be given a further extension; the request recited the Government's opposition to the motion because of its effect upon the Chrysler decree. The court nevertheless granted General Motors an indefinite extension. On November 29, 1941, the Government for the first time moved that General Motors be required to file an answer or other pleading. In response to this motion, the court ordered that General Motors file a pleading by January 15, 1942.

This is the background of fact in the light of which the District Court was required to judge whether the Government was equitably entitled to impose upon Chrysler for a further period the curtailment of its freedom of action embodied in the consent decree. Relevant to its determination, also, was the fact that paragraph 12 provided

only that, if the Government did not obtain a final order of divorcement against General Motors by January 1, 1941, then nothing *in the decree* against Chrysler would prohibit the latter from affiliating with a finance company. Nothing in paragraph 12 gave, or even purported to give, Chrysler any immunity from the antitrust laws after January 1, 1941. Therefore, if the decree were not modified, it would not mean that the Government would be powerless to proceed against Chrysler if the latter resumed the activities forbidden by the decree. The Government would still be free to take any action it might have taken before Chrysler consented to the decree against it.

A court of equity is not just an umpire between two litigants. In a very special sense, the public interest is in its keeping as the conscience of the law. The circumstance that one of the parties is the Government does not in itself mean that the interest which it asserts defines and comprehends the public interest which the court must vindicate. A modification of a decree requested by the Government is not *ipso facto* a modification warranted by considerations which control equity. Regard for the proper administration of justice, which makes determinations depend upon proof and not upon unsupported assertions of one of the litigants, is a vital aspect of the public interest. The burden obviously rested upon the Government to show good cause for disregarding an express provision in a carefully framed decree, and extending to twice its original duration the period of restraint against Chrysler. So to enlarge the burden of the decree without any such showing by the Government is a one-sided restriction of Chrysler's freedom of action, at least of its right to prove that the restricted action is innocent. Instead of exacting such proof from the Government, the District Court cast upon Chrysler the duty of showing that it would not be preju-

diced if the fetters remained after the period fixed by the decree. He who seeks relief from equity has the burden of showing that he is entitled to it. It is unfair to cast upon Chrysler the burden of proving that it would not be harmed if the Government got what it wanted. As a practical business matter, Chrysler is not standing on an abstract right to devise means of financing its sales simply because it is not ready today with arrangements for a financial corporation, and the war precludes them. Such arrangements cannot be devised overnight. It may well take a year to get them under way.

Considering, on the one hand, the drastic economic disadvantage to which Chrysler is put, in being subjected to the hazard of contempt proceedings if it takes any steps toward preparing for affiliation in the future, and, on the other hand, the failure of the Government to explain the apparent lack of diligence in prosecuting the proceedings against General Motors and to show that the modification was necessary to achieve the purposes of the consent decree, I am bound to conclude that the order of the District Court, unexplained by any opinion, was not within the proper limits of its discretion.

MR. JUSTICE REED joins in this dissent.