**UNITED STATES v. 111,000 ACRES OF LAND IN POLK AND HIGHLANDS COUNTIES, FLA., et al.**

No. 11543.

Circuit Court of Appeals, Fifth Circuit.

May 27, 1946.

684

J. Edward Williams, Acting Head, Lands Division, Dept. of Justice, Kelsey Martin Mott and Roger P. Marquis, Attys., Dept. of Justice, all of Washington, D.C., William D. Jones, Jr., Sp. Asst. to Atty. Gen., and Henry C. Tillman, Sp. Atty., Dept. of Justice, of Tampa, Fla., for appellant.

E. D. Treadwell and John H. Treadwell, Jr., both of Arcadia, Fla., for appellee.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

SIBLEY, Circuit Judge.

The appeal is from a judgment dated July 26, 1945, amending a judgment fixing the just compensation due Consolidated Naval Stores Company for the taking of its lands by condemnation rendered Aug. 6, 1942, the effect of the amendment being to require the United States to deposit in court an additional sum of $1,542 to meet taxes for the year 1942, claimed by Polk County, Florida.

Consolidated·Naval Stores Company, appellee, moves to dismiss the appeal on two grounds: 1. That the judgment appealed from was presented to the judge by appellant without notice to appellee, and in legal fraud upon the court and appellee. 2. That the appeal comes too late, the judgment of July 26, 1945, being only a reaffirmance of one dated April 30, 1945, and the appeal not being taken till October 23, 1945.

1. The first ground is supported by a certificate of the judge that counsel for the United States presented the judgment on July 26, representing that it was necessary as a final judgment from which an appeal could be taken, and that it was desired to protect the right to appeal to have advantage of a decision on a similar question pending before the Supreme Court, and the judgment was signed without requiring notice to respondent; that the judgment recites that the matter was before the court on motion of Consolidated Naval Stores Company which was an error, it being presented entirely by counsel for the United States; that in the orders of April 30, 1945, and July 26, 1945, the Court was not acting to amend the judgment of Aug. 6, 1942, but was making partial distribution of the money paid in under that judgment.

Notwithstanding this certificate, we do not think there was anything wrong in the taking of the judgment by counsel for the United States. The record shows that on April 13, 1944, appellee filed a motion setting up that tax claims for 1942 had arisen, and $3,717 had been held in court from the money awarded it as compensation, and that the United States contended the loss was on appellee; and if that be correct, appellee asserted that the judgment of Aug. 6, 1942, did not include interest at 6% from the date of taking to the deposit of the money in court, as provided by the statute; and the prayer was "that the Court enter an order herein amending the final judgment heretofore entered in this cause on Aug. 6, 1942, by providing that the just compensation to which respondent is entitled is the sum of $286,729 plus interest thereon at 6%." The judge had testimony taken as to the stipulation on which the judgment of Aug. 6, 1942, was based, and after a hearing, on April 17, 1945, rendered an opinion holding that the interest was due by law, that some of the tax claims had not been prosecuted, but that for $1,542 payable to Polk County should be paid, and that appellee should have the $3,717 balance of the money in court, but the United States would be directed to pay into court a further deposit of $1,542 to cover taxes due Polk County. The opinion concludes: "Let an appropriate order be prepared for my approval." An order was signed on April 30, which recites that it was on "a motion for partial distribution in the cause", directing the Clerk to pay to appellee the $3,717 on hand. It said nothing about amending the judgment to require the United States to pay $1,542 into court. The order July 26, 1945, presented by counsel for the United States in order to have an appealable judgment (as he stated to the judge) recites that the matter was before the court on the motion of Consolidated Naval Stores Company to amend the judgment of Aug. 6, 1942; and refers to the above opinion, and adjudges that in pursuance of it the Company should receive the

$3,717 in the registry of the court, and that the United States be decreed to pay into court the further sum of $1,542 necessary to pay the Polk County taxes. We think the judgment follows the conclusions announced in the opinion and is an appropriate order such as was directed to be presented. Ordinarily the Company as the successful party would have presented it, but not having done so, and the United States desiring to appeal from the requirement to pay more money, there was no impropriety in the losing counsel acting as the scrivener of the court. No advantage was taken of court or the opposite party. The judgment was what the opinion required. The failure to give notice did no harm.

■ 2. The order of distribution of April 30 was directed to the Clerk. It does not refer to the motion to amend the judgment nor to the opinion on that motion. It did not require anything of the United States. While the judgment of July 26 adjudges the distribution of the $3,717 to the Company and confirms it, it for the first time adjudges that the United States pay more. As respects the United States it is the appealable judgment and the appeal from it was taken in time. Under the circumstances the United States is not estopped from attacking it because its counsel presented it for signature.

■ 3. Appellant contends that the district court was without jurisdiction in 1945 to amend the judgment of Aug. 6, 1942; and that the motion that it be amended was untimely. Before the new Rules of Civil procedure the judge-made law was well settled that, while during the term of the court all its judgments are "in the breast of the court" and subject to its control, after the term ends the final judgments, as distinguished from interlocutory ones, cannot be altered unless on motions made during the term and carried over, or on direct attack for fraud or mistake or some illegality other than mere error. 31 Am.Jur., Judgments, § 727, 728, and cases cited. Rule of Civil Procedure 60(b), 28 U.S.C.A. following section 723c, modifies the term idea, and fixes a limit of six months after the judgment instead. But by Rule 81(a) (7) condemnation cases are not under those rules

except as to appeals, so in this case the law in the district court remains unchanged. We think this judgment of Aug. 6, 1942, which fixed the compensation to be paid by the United States to appellee as the owner of these lands, was a final judgment in this condemnation case, notwithstanding jurisdiction remained to make further orders of distribution. By it title was finally fixed in the United States to the interest described in the petition, "a fee simple absolute, free and clear and discharged from all liens, encumbrances, servitudes, easements, charges, demands, claims, and covenants whatsoever." And by it was adjudged also, "pursuant to said stipulation before referred to, the fair market value of said lands is the sum of $286,729."

The stability of a final judgment at law after the term was strongly stated for the federal courts in Bronson v. Schulten, 104 U.S. 410, 26 L.Ed. 797, and upon the authority of that case similarly stated for the Florida courts in Alabama Hotel Co. v. J. L. Mott Iron Works, 86 Fla. 608, 98 So. 825. But in the last cited case a judgment entered not on contest but on consent was set aside by the court on the ground that the consent was not rightly understood by the court in rendering the judgment. Correction of consent judgments after the term was dealt with also in Chrysler Corporation v. United States, 316 U.S. 556, 62 S.Ct. 1146, 86 L.Ed. 1668, and State of Wisconsin v. State of Michigan, 295 U.S. 455, 55 S.Ct. 786, 79 L.Ed. 1541. Differing among ourselves on some points, we need not define what exact limits there are to the power of the court to reopen such judgments, nor the precise grounds which must be shown, nor decide whether sufficient grounds were alleged in this case to require the court to make an enquiry; for we all think that the evidence which was given in the enquiry undertaken by the court was insufficient to authorize a change in the judgment.

■ 4. The evidence showed clearly that on April 17, 1942, after the condemnation proceeding was begun Jan. 19, 1942, counsel for the parties met, the Company stated it had a clear title, free of liens, and no one mentioned taxes of 1942, which however by Florida law attached as a lien

on January 1, though not assessed, nor the tax rate fixed till later. A stipulation was signed summarized thus: 1. The Company represents itself to be seized and possessed of a fee simple title. 2. Trial by jury is waived. 3. "The fair and reasonable market value of the lands * * * aggregates $287,579, and that sum represents just compensation to be paid to the said respondent for the taking of its fee simple title by the petitioner herein." 4 "That a judgment be entered in favor of respondent against petitioner for the aggregate sum of $287,579 in full compensation to respondent for the taking of its lands." 5. The petitioner shall proceed speedily to examine and verify titles, and will consent to immediate orders of distribution as the various tracts are so verified. 6. Respondent is "not to be chargeable with the matter of any compensation that may be paid by petitioner to any lessee of respondent, or by reason of reservation by the State of Florida of any oil or mineral rights." The two attorneys and the executive vice-president of the Company who acted in its behalf all testified that they stand by stipulation; that nothing was put in it that was not intended, and nothing was left out; that the 1941 taxes had been paid and nothing was then said about the 1942 taxes. They make no complaint about the delay of three months in examining and approving the title to the many tracts making up the 101,000 acres here involved. They say the taxes were first mentioned on Aug. 4, when the agreed money was paid into court, counsel for the United States then contending that $3,717 ought to be reserved in the registry of the court, that being the total of taxes assessed against the lands. On August 6, the judgment vesting title in the United States and fixing the value of the lands at $286,729, was entered expressly pursuant to the stipulation, and was consented to in writing by counsel for both parties. At the same time and on a like consent the money deposited was ordered distributed to the Company except $3,717, recited to be the amount of taxes assessed, which was reserved for disposition according to the further orders of the court. That judgment accords with the stipulation.* The sixth paragraph of the stipulation protects the Company in respect of some claim of the State to oil rights and some possible claim of lessees. There is no testimony as to them, but we presume these claims proved of no consequence. No protection was stipulated for against anything else. The stipulation did not mention interest, nor did the consent judgment. It turned out that the taxes in an amount of only $1,542 would have to be paid. The district judge correctly held that the lien for them against the land was transferred to the fund, and payable out of it. The assessment of the taxes did not add anything to the value of the land, which the United States was acquiring. They are the burden of the owner of the lands on Jan. 1, 1942, before the United States took them. United States v. 25.936 Acres of Land, 3 Cir., 153 F.2d 277, decided by the Third Circuit Court of Appeals Jan. 9, 1946; United States v. Greer Drainage District, 5 Cir., 121 F.2d 675. The contention for interest is an afterthought, and is urged and has been allowed only in an amount sufficient to pay the taxes. No doubt the Company expected to receive the agreed value in full, but its disappointment arises from no fault of the United States. There is no sufficient reason to shift the burden of the taxes to the United States. The consent judgment, the term of court being long past, ought to stand, it not being the product of any fraud or accident or mistake and being in accordance with the stipulation on which it rests.

The judgment appealed from is reversed and set aside in so far as it requires the United States to pay an additional sum into court.

Judgment reversed.

---

* The slight reduction is due to a title failure as to a small tract.