HARTFORD STEAM BOILER INSPECTION & INSURANCE CO. ET AL. *v.* HARRISON, INSURANCE COMMISSIONER.

No. 355. Argued February 2, 1937.—Decided May 24, 1937.

*Mr. Marion Smith,* with whom *Mr. Harold Hirsch* was on the brief, for appellants.

*Mr. B. D. Murphy,* Assistant Attorney General of Georgia, with whom *Mr. M. J. Yeomans,* Attorney General, was on the brief, for appellee.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

The Hartford Steam Boiler Inspection and Insurance Company, a stock corporation organized under the laws of Connecticut, carrying on casualty insurance business in Georgia, and its salaried employee W. M. Francis, citizen of that State, asked the Superior Court, Fulton County, for a mandamus requiring the Insurance Commissioner to license him as resident agent. The Commissioner claimed that while duly qualified in all other respects, the employee could not be so licensed because of the inhibition in § 1, Act of the General Assembly, approved March 28, 1935. Georgia Laws, 1935, p. 140:

"No licensed fire or casualty insurance company or company writing fidelity or surety bonds, shall write or issue any policy or indemnity contract on any risk in this State except through a resident agent licensed by the Insurance Commissioner: Provided . . . The words 'resident agent' as used in this section are deemed to mean resident agents engaged in the solicitation of such business from the public generally and shall not include any salaried employee of any insurance company doing business in this State; but shall include any agents of mutual insurance companies however compensated. . . ."

Appellants claimed that enforcement of the quoted inhibition would deprive them of the equal protection of the laws, contrary to the Fourteenth Amendment.

The trial court ruled "that said act, in discriminating against stock companies and the agents thereof, and in favor of mutual companies and the agents thereof, sets up an arbitrary classification bearing no reasonable relationship to the subject-matter of the legislation, and is discriminatory, depriving both petitioner, The Hartford Steam Boiler Inspection and Insurance Company, as an insurance company, and petitioner, W. M. Francis, as an individual, of their constitutional rights." Accordingly, it directed that mandamus issue.

In the State Supreme Court counsel agreed that the sole question involved was the constitutionality of the statute. That Court, being of opinion that the Act prescribed no undue discrimination and did not otherwise conflict with the Federal Constitution, reversed the trial court. The cause is here by appeal.

The applicable principle in respect of classification has often been announced. It will suffice to quote a paragraph from *Louisville Gas & Electric Co.* v. *Coleman,* 277 U. S. 32, 37, 38.

". . . it may be said generally that the equal protection clause means that the rights of all persons must rest upon the same rule under similar circumstances, *Kentucky Railroad Tax Cases,* 115 U. S. 321, 337; *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283, 293, and that it applies to the exercise of all the powers of the state which can affect the individual or his property, including the power of taxation. *County of Santa Clara* v. *Southern Pac. R. Co.,* 18 Fed. 385, 388–399; *The Railroad Tax Cases,* 13 Fed. 722, 733. It does not, however, forbid classification; and the power of the state to classify for purposes of taxation is of wide range and flexibility, provided always, that the classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons

similarly circumstanced shall be treated alike.' *Royster Guano Co.* v. *Virginia,* 253 U. S. 412, 415; *Air-way Corp.* v. *Day,* 266 U. S. 71, 85; *Schlesinger* v. *Wisconsin,* 270 U. S. 230, 240. That is to say, *mere* difference is not enough: the attempted classification 'must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis.' *Gulf, Colorado & Santa Fe Ry.* v. *Ellis,* 165 U. S. 150, 155. Discriminations of an unusual character especially suggest careful consideration to determine whether they are obnoxious to the constitutional provision. Compare *Martin* v. *District of Columbia,* 205 U. S. 135, 139; *Bell's Gap R. Co.* v. *Pennsylvania,* 134 U. S. 232, 237."

Despite the broad range of the State's discretion, it has a limit which must be maintained if the constitutional safeguard is not to be overthrown. Discriminations are not to be supported by mere fanciful conjecture. *Borden's Co.* v. *Baldwin,* 293 U. S. 194, 209. They cannot stand as reasonable if they offend the plain standards of common sense. In this instance, the appellant company had been licensed to do business in the State and was entitled to equal protection in conducting that business. The answer of the insurance commissioner admitted that he was "entirely satisfied as to the character, standing, responsibility, ability, and knowledge" of the proposed agent, and that the license was refused solely because he was a "salaried" employee. It is plain that the requirement that the resident agents of stock companies should not work on a salary has no relation to economy or efficiency in management. The answer of the insurance commissioner states that all of the contracts of mutual fire and casualty insurance companies are "negotiated by salaried employees" and that this method of doing busi-

ness was adopted "in order to reduce the expenses of operation and thus benefit the policyholders themselves."

It is idle to elaborate the differences between mutual and stock companies. These are manifest and admitted. But the statutory discrimination has no reasonable relation to these differences. We can discover no reasonable basis for permitting mutual insurance companies to act through salaried resident employees and exclude stock companies from the same privilege. If there were any such basis, it would have been discovered by the state courts. The trial court said there was none. Two Justices of the Supreme Court were of the same opinion. The prevailing opinion in that court fails to disclose any good reason for the discrimination. The diligence of counsel for appellee has not been more successful. Thus the efforts in the state courts, and here, to find support for the statute have conspicuously failed. Statements as to the extent of the business written by stock companies are obviously beside the mark.

For the error indicated, the questioned judgment must be reversed and the cause returned to the Supreme Court for further proceedings not inconsistent with this opinion.

*Reversed.*

MR. JUSTICE ROBERTS, dissenting.

The appellants petitioned the Superior Court of Fulton County, Georgia, for a mandamus directed to the appellee as Insurance Commissioner requiring him to issue a license to Francis, a salaried employe of the Hartford Company, as an insurance agent for the writing of casualty insurance in the State of Georgia pursuant to the Act of the General Assembly of March 28, 1935. The petition alleged that Francis possessed all the statutory qualifications for a license save only that he was a salaried employe of the insurance company and that the pro-

vision of the statute excluding salaried employes of insurance companies from licensure is unconstitutional.

Section 1 of the act of 1935 [1] prohibits licensed fire or casualty insurance companies from writing or issuing any policy or indemnity contract on any risk in the state of Georgia except through a resident agent licensed by the Insurance Commissioner. The section requires the applicant for a license to be a bona fide resident of the state, of good character and competent to perform the duties of an agent. It further provides: "The words 'resident agent' as used in this section are deemed to mean resident agents engaged in the solicitation of such business from the public generally and shall not include any salaried employe of any insurance company doing business in this state; but shall include any agents of mutual insurance companies however compensated."

The ground upon which the act is held invalid is that it unreasonably discriminates between salaried employes of mutual insurance companies and similar employes of stock companies.

The answer alleges that there is a well recognized difference between stock and mutual insurance companies in that, in the case of the former, the relationship between the company and its policy-holders is one of contract merely, they dealing at arm's length, whereas in the latter the policy-holders are the owners of the company and constitute its membership. Other well known differences between mutual and stock insurance are detailed in the answer and will be referred to hereinafter.

The case was heard upon the petition and answer and the trial court, in the view that the act was unconstitutional, ordered that a mandamus issue. Upon appeal the Supreme Court of Georgia reversed the judgment. I

---

[1] Act of March 28, 1935. Georgia Acts 1935, p. 140.

am of the opinion that its decision was right and should be affirmed.

*First.* On its face the statute is a proper exercise of the state's police power. The provision for licensing only *bona fide* residents of the state is valid.[2] Regulation of the rates charged for insurance, of the relations of those engaged in the business and of the amount of agents' compensation fall within the exercise of this power.[3] The claim here is that the particular regulation is unreasonable and discriminatory. The presumption of constitutional validity must prevail unless the terms of the statute, or what we judicially know, or facts proved by the appellants, overthrow that presumption. As it is conceivable that conditions existed in Georgia which justified the difference in treatment of the agents of the two sorts of companies, and as no circumstances are alleged or proved or are of judicial knowledge which negative the existence of those conditions the attack upon the statute should fail.[4]

*Second.* The appellant Francis asserts he is denied equal protection because agents of mutual insurance companies may be licensed even though their compensation consists of a salary rather than commissions. The answer sets up that mutual insurance companies are organized on a different basis from stock companies, do business in a wholly different way and sustain an altogether different relation to their policy-holders than do stock companies. This is matter of common knowledge. Section 56–1401 of the Georgia Code 1933 is: "The contract of insurance is sometimes upon the idea of mu-

---

[2] *La Tourette* v. *McMaster,* 248 U. S. 465.

[3] *O'Gorman & Young* v. *Hartford Insurance Co.,* 282 U. S. 251, 257.

[4] *O'Gorman & Young* v. *Hartford Insurance Co., supra,* 257–258; *Borden's Farm Products Co.* v. *Baldwin,* 293 U. S. 194, 208, 209.

tuality, by which each of the insured becomes one of the insurers, thereby becoming interested in the profits and liable for the losses; without a charter, such an organization would be governed by the general law of partnership; when incorporated, they are subject to the terms of their charters." Sections 56-1401 to 56-1433 deal exclusively with the incorporation and government of mutual insurance companies setting up for them a system quite apart from that prescribed for the incorporation and regulation of stock companies. The decision law of the state also recognizes the fundamental difference between the two kinds of company.[5] The Supreme Court of Georgia quoted and relied upon its earlier decision as to the radical difference between stock and mutual companies and their methods of transacting business, and refused to hold the classification of the statute arbitrary or unreasonable.

The literature on the subject shows that at its inception the fire insurance business in the United States was modelled upon the mutual companies of Great Britain.[6] Stock companies, however, were soon organized and rapidly grew to such proportions that to-day they transact about seventy-five per cent of the nation's fire insurance business. Local and state mutual insurance companies now write about ten per cent of the total of fire insurance and are strongest in agricultural districts and the smaller cities; another ten per cent of the total business is written by so-called factory mutuals; the balance is cared for by Lloyd's associations.[7]

The principle of assessment upon which mutual companies proceed is practical only for carrying risks closely uniform in kind and degree, its chief advantage being

---

[5] Carlton v. Southern Mutual Insurance Co., 72 Ga. 371.

[6] Enc. of the Social Sciences, Vol. VI, 255; Yale Readings in Insurance, Property, Chapter IV.

[7] Enc. of the Social Sciences, Vol. VI, 258.

low operating cost due to simplicity of organization, and it is said that the sales staffs of such companies work either "on a salaried basis or on a lower scale of commissions than do the representatives of stock companies." [8] There are approximately twenty-five hundred mutual fire and casualty institutions operating throughout the United States, the vast majority of which concentrate their operations locally within one or more counties or within a single state. "These companies rarely compete with agency represented stock companies and there has been no apparent inclination on their part to alter the scope of activity or plan of operation. Of the many mutual fire insurance companies probably no more than ten per cent extend their fields of operation beyond the boundaries of their home state." [9]

Reference to the report of the Insurance Commissioner of Georgia for 1934, the year preceding the adoption of the statute under review, furnishes interesting data on the relative business of stock and mutual insurance companies in the state of Georgia. For that year the total of risks carried by stock fire insurance companies in the state was $1,512,181,296. Foreign mutual fire insurance companies carried only $82,727,816. Two domestic mutual companies doing a state-wide business carried $73,370,-177, and fourteen small local mutuals carried $10,893,603. Thus, mutual companies carried about ten per cent of the total fire insurance business of the state and, of that ten per cent, over one-half was written by Georgia mutual companies.

While Georgia does not exclude foreign mutuals and requires them, like foreign stock companies, to register and comply with certain statutory rules in order to write business within the state, it is evident that the total mutual business written in Georgia is of minor importance

---

[8] Enc. of the Social Sciences, Vol. VIII, p. 100.

[9] Best's Insurance News, October 1935, p. 314.

when compared with the vast amount written by stock companies. This fact in itself may well be a persuasive reason for not extending to agents of mutual companies the requirement that they shall not work upon a salary.[10] When to this is added the fact that ordinarily such agents work on salary because, in effect, they are the agents of the policy-holders rather than of independent owners of a stock corporation, it is plain that there is reason for classifying them differently from agents of stock companies. In the light of the facts the classification of the agents of the two sorts of company cannot be said to be arbitrary or unreasonable, and so to deny the agents of the stock companies the equal protection of the laws.

MR. JUSTICE BRANDEIS, MR. JUSTICE STONE, and MR. JUSTICE CARDOZO concur in this opinion.

---

[10] Compare *Citizens' Telephone Co.* v. *Fuller*, 229 U. S. 322.