**WINN–DIXIE STORES, INC., Plaintiff,**

v.

**FEDERAL TRADE COMMISSION, Defendants.**

**No. 73–863–Civ–J–S.**

United States District Court, M. D. Florida, Jacksonville Division.

May 17, 1974.

J. Shepard Bryan, Jr., Winn-Dixie Stores, Inc., Jacksonville, Fla., and James F. Rill, John Hardin Young, Washington, D. C., for plaintiff.

Calvin J. Collier, Gen. Counsel, Gerald Harwood, Acting Asst. Gen. Counsel, Karl H. Buschmann, Atty., Federal Trade Commission, Washington, D. C., John L. Briggs, U. S. Atty., John J. Daley, Jr., Asst. U. S. Atty., Jacksonville, Fla., John R. Fleder, Atty., U. S. Dept. of Justice, Washington, D. C., for defendants.

## ORDER AND INJUNCTION

CHARLES R. SCOTT, District Judge.

This case involves a consent order entered by the defendant Federal Trade Commission (sometimes hereinafter Commission and sometimes FTC), against plaintiff Winn-Dixie Stores, Inc. (W–D), in 1966, and the effect to be accorded the terms of the order and the agreement upon which it was based.

Plaintiff has asked this Court (a) preliminarily and permanently to enjoin defendants from enforcing certain portions of the modified cease and desist order entered against Winn-Dixie, 73 F.T.C. 1056 (1968); (b) to order defendants to reopen the proceeding which led to the order and modify the order so as to make it conform to the order entered against one of Winn-Dixie's competitors, The Kroger Company, 79 F.T.C. 636 (1971); and (c) to declare certain of defendants' actions to be arbitrary, capricious and unlawful.

Pursuant to the provisions of Rule 65(a)(2) plaintiff moved that the hearing on the application for preliminary injunction be consolidated with trial on the merits and that the trial be advanced. Defendants consented to this procedure, and all parties presented their cases on the merits at the time of the hearing on the application for preliminary injunction. Therefore, the Court finds it appropriate to consider the case on its merits at this time.

### I. FACTS

Following an investigation by the FTC of several acquisitions made by Winn-Dixie which the Commission had reason to believe violated Section 7 of the Clayton Act, as amended, the Commission, pursuant to its consent order procedure (16 C.F.R. § 2.31 et seq.) accepted an agreement, dated July 26, 1966, between W–D and counsel for the Federal Trade Commission. Pursuant to the agreement, the Commission, on September 14, 1966, simultaneously issued its complaint and final order to cease and desist, whereby W–D agreed, *inter alia*, not to make any acquisition, directly or indirectly, of any retail food or grocery stores in the United States without prior approval of the Commission. 70 F.T.C. 611–19 (1966). Among other things, that order provides,

> It is ordered, That for ten (10) years from the effective date of this Order, respondent shall not, without prior approval of the Federal Trade Commission, make any acquisitions, directly or indirectly, of any retail food or grocery stores in the United States.

The agreement further contains two provisions relevant to the instant controversy.

First, it contains a "most favored nation" clause which in substance provides that the Commission, upon application by Winn-Dixie, shall reopen the proceeding to modify the order if it is found to be more restrictive than an order or Rule subsequently issued involving mergers or acquisitions by a grocery chain.

Second, the agreement also states that Winn-Dixie "waives: . . . (c) All rights to seek judicial review or otherwise to challenge or contest the validity of the Order entered into pursuant to this Agreement".

Since the entry of the original order, Winn-Dixie has filed with the Commission three separate requests for reopening of the proceeding to modify the order. On February 17, 1967, it sought a modification on the basis of the FTC's "Enforcement Policy With Respect to Mergers in the Food Distribution Industries", which the Commission by order and opinion of April 17, 1967, denied.

On February 21, 1968, Winn-Dixie again requested a reopening of the proceeding to modify the order. The Commission by order of June 24, 1968, reopened the proceeding and modified the above order because it found its order entered against the Grand Union Company (hereinafter called Grand Union) to be less restrictive. 73 F.T.C. 1050 (June 21, 1968). This modified order is now in force against W–D.

On May 3, 1972, Winn-Dixie petitioned the Commission to reopen the proceeding and further modify the cease and desist order outstanding against Winn-Dixie to conform to an order entered by the FTC against The Kroger Company, which order Winn-Dixie alleged to be less restrictive than the modified order against Winn-Dixie. The request was opposed by the Federal Trade Commission.

By Order of November 6, 1972, the Commission, in response to Winn-Dixie's request of June 20, 1972, agreed to hear oral argument concerning Winn-Dixie's request for further modification. On March 28, 1973, oral argument was heard before the Commission, and on May 30, 1973, an order was issued, accompanied by an opinion, denying reopening and modification. This lawsuit then was commenced.

## II. JURISDICTION

At the outset the Court is faced with the perennial threshold question of whether or not it has jurisdiction to hear and determine the controversy. Defendants have moved to dismiss the complaint for lack of jurisdiction in this Court on the theory that there can be no judicial review of the FTC's denial of Winn-Dixie's motion to reopen and modify the existing consent order. In the alternative, the FTC argues that, even if there is judicial review of the Commission action, the proper forum for such review is the court of appeals rather than the district court.

■ This Court finds that the Commission's failure to reopen and modify the Winn-Dixie order to conform it to an allegedly less restrictive order of a competitor is reviewable in the district court under the Administrative Procedure Act (APA), 5 U.S.C. § 701 et seq., under the Court's general equity powers, and under the standards established in Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), and Air Line Pilots Assoc. Int'l. v. Federal Aviation Administration, 446 F.2d 236 (5th Cir. 1971).

■ The APA expressly provides for judicial review of administrative action which is arbitrary, capricious or an abuse of discretion. 5 U.S.C. §§ 701–706. Section 703 of the APA provides for review of agency action (a) in a court specified by statute, or (b) in any court of competent jurisdiction. Furthermore, access to judicial review must be liberally granted. Chicago v. United States, 396 U.S. 162, 90 S.Ct. 309, 24 L.Ed.2d 340 (1969); Brownell v. We-Shung, 352 U.S. 180, 77 S.Ct. 252, 1 L.Ed.2d 225 (1956); Shaughnessy v. Pedreiro, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868 (1955); Heikkila v. Barber, 345 U.S. 229, 73 S.Ct. 603, 97 L.Ed. 972 (1953); United States v. Interstate Commerce Commission, 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451 (1949).

In Abbott Laboratories, supra, the government argued, as it does here, that since the statute (in that case the Federal Food, Drug and Cosmetic Act; in this case the Federal Trade Commission Act) includes a specific procedure for review, other types of review are excluded. The court rejected that assertion, holding that the district court had jurisdiction to review the agency action and grant injunctive relief where it is appropriate. The court further held that, ". . . only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review". 387 U.S. 136 at 141.

In Air Line Pilots Assoc. Int'l v. FAA, supra, the Court of Appeals for the Fifth Circuit concluded that reviewability was determined by meeting the two-prong test developed in Abbott Laboratories, supra, of " 'whether the issues tendered are appropriate for judicial resolution' " and " 'whether hardship [would result] to the parties if judicial relief [were] denied' ". 446 F.2d 236, 241. In the instant case Winn-Dixie meets the reviewability test developed in Abbott Laboratories and Air Line Pilots Association. Plaintiff's challenge to the Commission's failure to reopen and modify the order against W–D is ready and

appropriate for judicial resolution, and no alternative means of resolving the dispute is available. Therefore, for the reasons outlined herein, the Court holds that the Commission's order of denial is subject to and appropriate for judicial review.

The second prong of the *Abbott Laboratories* test is also met because Winn-Dixie will suffer hardship and be irreparably injured if judicial review is denied, since the Commission's denial of reopening and modifying the order places W–D at a distinct disadvantage to competitors.

 It is apparent to the Court that the provision of the original consent order whereby Winn-Dixie waives judicial review applies only to review of the substantive terms of that original order and not to subsequent causes of action arising out of the Commission's breach of the agreement contained in that order. Winn-Dixie seeks review of the breach of the agreement to modify and does not seek review of the substantive terms of the consent order as originally entered.

 While it is a general rule of administrative law that an administrator's denial of a motion to reopen a proceeding for the purpose of modifying a Commission order is not subject to judicial review, Securities and Exchange Commission v. Louisiana Public Service Commission, 353 U.S. 368, 77 S.Ct. 855, 1 L.Ed.2d 897 (1957); Martin Marietta Corp. v. FTC, 376 F.2d 430 (7th Cir. 1967), in this case the order itself contemplates reopening if and when another grocery chain receives more favorable treatment from the FTC. *See, e. g.,* Ford Motor Co. v. United States, 335 U.S. 303, 69 S.Ct. 93, 93 L.Ed. 24 (1948); Chrysler Corp. v. United States, 316 U.S. 556, 62 S.Ct. 1146, 86 L.Ed. 1668 (1942).

Winn-Dixie might never have agreed to the original consent order if the "most favored nation" clause had not been included in it. Such a clause necessarily implies the right to reopen and modify the consent order, and the Com-mission cannot have the discretion to arbitrarily and capriciously refuse to reopen. If such discretion were vested in the Commission and there were no judicial review of the exercise thereof, the presence of the "most favored nation" clause in the order would be meaningless.

Defendants rely heavily on the case of *Martin Marietta, supra,* which the Court finds to be clearly distinguishable from the case at bar. That case involved a request for modification of the terms of the consent order itself and did not contain a "most favored nation" clause agreement for reopening and modification. There the court properly refused to reopen and modify the original consent order. Here Winn-Dixie seeks only to enforce the agreement to reopen and modify which is contained in the original order. The absence of a most favored nation clause in that case gave an aura of greater finality to those orders than exists in this case. There it was likely that no need to modify the consent orders would ever exist. In this case it was contemplated and anticipated by the parties from the outset that modification of the order might become necessary.

Defendants next contend that even if the Commission's action is reviewable, the plaintiff should have sought review in the court of appeals rather than in the district court, because the Federal Trade Commission Act provides for review in the courts of appeal.

In support of this contention defendants rely on the case of Floersheim v. Engman, 494 F.2d 949 (D.C.Cir. 1973), where the court held that neither the court of appeals nor the district court had subject matter jurisdiction under the Federal Trade Commission Act or the APA to review the FTC's determination that action proposed by Floersheim would violate the outstanding cease and desist order. The court reasoned that where a cease and desist order of the FTC has been affirmed in an action before the court of appeals any question of the order's meaning should be heard by

the court of appeals that enforced it, rather than by the district court. *See also*, Regal Knitwear Co. v. N. L. R. B., 324 U.S. 9, 65 S.Ct. 478, 89 L.Ed. 661 (1945); 15 U.S.C. § 21(c), (d) and § 45(c).

In contrast to the *Floersheim* case, the consent order in this case has never been before the court of appeals nor does plaintiff seek review of Commission denial of plaintiff's proposed actions. What plaintiff seeks is an order compelling the Commission to perform what it agreed to do in the consent order; *i. e.*, to reopen the proceeding and modify the order.

The *Floersheim* case stands for the general proposition that where a court of appeals affirms an agency order, any review of that order is in the court of appeals. It does not support the defendants' contention that, in any case, review of the FTC's denial of a motion to reopen an order is in the court of appeals.

So far as the question of district court jurisdiction is concerned, the *Floersheim* case holds that the district court has no jurisdiction to review the Commission determination that Floersheim's proposed course of action would violate the cease and desist order already enforced by the court of appeals.

All parties agree that, assuming the Court has jurisdiction to review the agency action, the scope of review is to determine whether or not the FTC has acted in a manner which is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law". 5 U.S.C. § 706.

This Court finds that it has jurisdiction to review the allegedly arbitrary and capricious agency action which, plaintiff contends, constitutes an abuse of discretion. Elmo Division of Drive-X Co. v. Dixon, 121 U.S.App.D.C. 113, 348 F.2d 342 (1965); Elmo Co. v. Federal Trade Commission, 128 U.S.App.D.C. 380, 389 F.2d 550 (1967). Therefore, defendants' motion to dismiss the complaint for lack of jurisdiction over the subject matter should properly be denied.

## III. MERITS OF THE CONTROVERSY

On October 16, 1971, the Federal Trade Commission entered a consent order against The Kroger Company (hereinafter called Kroger) involving a merger or acquisition by a grocery store chain. 79 F.T.C. 636 (1971). Winn-Dixie contends that the order issued by the FTC against Kroger is less restrictive with regard to mergers and acquisitions than is the order which is now in effect against W–D.

This condition, Winn-Dixie alleges, violates the letter and the spirit of the so-called "most favored nation" clause contained in the agreement entered into between W–D and the Commission in 1966, which provides,

> [I]n the event that the Federal Trade Commission issues any Order or Rule which is less restrictive than the provisions of this Order, in any proceeding involving mergers or acquisitions by a grocery store chain, then the Commission shall, upon the application of respondent, pursuant to rule 3.28 of the Commission's Rules of Practice, reopen this proceeding in order to make whatever revisions, if any, are necessary to bring the restrictions imposed upon respondent herein into conformity with those imposed upon its competitors.

On May 3, 1972, Winn-Dixie applied to the Commission requesting revision of the W–D order to conform it to the allegedly less restrictive terms of the Kroger order. This request was based on the revision agreement of 1966, with its most favored nation clause. On May 30, 1973, after hearing, the Commission, Commissioner Dennison dissenting, issued an order and opinion denying W–D's application.

Winn-Dixie then brought this action alleging that the Commission's failure to reopen and modify the 1968 W–D order is arbitrary, capricious and an abuse of discretion and fails to comply with the agreement entered into between Winn-Dixie and the Commission in 1966.

Therefore, W–D claims, the Commission's order denying reopening and modification should be set aside, and the Commission should be enjoined from enforcing against Winn-Dixie so much of the 1968 order as is more restrictive than the Kroger order.

Before the Court can properly grant the relief sought by Winn-Dixie, the following three questions must be answered in the affirmative: (1) Does the Kroger order involve a "merger or acquisition by a grocery store chain" as that phrase is used in the 1966 agreement? (2) Is the Kroger order less restrictive than the Winn-Dixie order as modified after Grand Union? (3) Is modification necessary to bring the Winn-Dixie order into conformity with the Kroger order?

## (A) *Does the Kroger Order Involve an Acquisition?*

It is not disputed that the Kroger order involves an acquisition by a grocery store chain. The order against Kroger was in response to Kroger's acquisition of leased food departments in three Gold Circle stores in Dayton, Ohio.

## (B) *Is the Kroger Order Less Restrictive?*

The question of whether or not the Kroger order is less restrictive than the Winn-Dixie order is the most hotly contested issue of this case. The thrust of the Federal Trade Commission's argument, and the theory on which it based its order denying reopening and modification, is that, although *part* of the Winn-Dixie order may be more restrictive than part of the Kroger order, taken as a whole, the Kroger order is more restrictive than the W–D order. This conclusion is reached by the Commission by comparing the factual situations which gave rise to the Commission's or-

ders in these two cases. Vicksburg v. Henson, 231 U.S. 259, 34 S.Ct. 95, 58 L. Ed. 209 (1913); Virginia Excelsior Mills v. Federal Trade Commission, 256 F.2d 538 (4th Cir. 1958); Ostler Candy Co. v. Federal Trade Commission, 106 F.2d 962 (10th Cir. 1939).

The Commission entered its order against Kroger in response to Kroger's acquisition of the leased food departments in the aforesaid three Gold Circle stores. Kroger was already the leading food marketer in the Dayton area, so these three acquisitions involved a comparatively small, strictly horizontal,[1] acquisition in a single market. The order required total divestiture of the leased food departments.

The activities giving rise to the original complaint against Winn-Dixie were W–D's acquisition of the 35-store Hill Grocery chain in 1962, which was operating in northern central Alabama, and Winn-Dixie's subsequent acquisition in 1963 of nine grocery stores operated by Colonial Stores, Inc., in Birmingham, Alabama. These acquisitions were charged in the Commission's complaint as essentially geographic market extensions,[2] although they did have horizontal aspects. The consent order did not require Winn-Dixie to divest itself of any stores but provided that, for a ten-year period, W–D was prohibited from making any acquisition of any retail food or grocery store without prior Commission approval. Subsequently the Grand Union order was entered and, in response thereto, the Commission modified the order in force against Winn-Dixie to impose the "5–5–5"[3] criteria.

The Kroger and Winn-Dixie orders differ in three major respects. First, the Kroger order does not require prior Commission approval of a food store

---

1. A horizontal acquisition is an acquisition by a company in an area where it is already engaged in that business. In contrast, a geographic acquisition is an acquisition by a company in an area where it does not already engage in business.

2. *Id.*

3. The "5–5–5" category refers to mergers or acquisitions involving five or more states, or more than five million dollars of annual sales involving more than five percent of food store sales in any city or county.

merger or acquisition, however large, except in approximately 20 states where that company presently does business. Winn-Dixie, on the other hand, is subject to an absolute Commission veto as to such acquisitions throughout the entire United States. Second, the Kroger order establishes shorter time periods than the Winn-Dixie order for giving notice of proposed mergers or acquisitions. In the "5–5–5" or larger catego-ry, Kroger must give the Commission 60 days prior notification except that, when Kroger's time schedule does not permit such notice, Kroger is required to give 30 days notice following consummation of a merger or acquisition, whereas the Winn-Dixie order requires 60 days advance notice without exception. 73 F.T. C. 1056 (1968). The orders in *Winn-Dixie, Grand Union* and *Kroger* may be summarized as follows:

| | Duration of Order | Area | 60 Day Notice 5–5–5 Mergers or Acquisitions [4] | 10 Day [5] Notice | 30 Day [6] Notice |
|---|---|---|---|---|---|
| Original Order against Winn-Dixie | Ten Years | Entire United States | No [7] | No [7] | No [7] |
| Grand Union Order | Ten Years | Entire United States | Yes | No | No |
| Modified Winn-Dixie Order after Grand Union (now in force) | Ten Years | Entire United States | Yes | No | No |
| Kroger Order | Ten Years | Limited to 20 States | Yes | Yes | Yes |

4. 60 day notice is required for mergers or acquisitions involving the "5–5–5" category.

5. This requirement is defined in the Kroger order and provides for 10 days notice after a merger or acquisition if Kroger's time schedule does not permit a longer notice period.

6. This requirement is defined in the Kroger order and provides for 30 days notice of mergers or acquisitions involving four or less stores or less than five million dollars in annual sales.

7. The original Winn-Dixie order prohibits any mergers or acquisitions without prior approval.

———◆———

There are certain other differences between the Winn-Dixie order and the Kroger order, but no one contends that the agreement upon which this case is based requires exact identity of restrictions. Thus, Winn-Dixie does not seek

complete conformity of its order to the Kroger order, but only seeks substantive compliance with the agreement of 1966.

The Commission recognizes that the most favored nation clause must be honored. In granting Winn-Dixie's application for modification after Grand Union, the *Federal Trade Commission* both adhered to its commitment in the agreement underlying the Winn-Dixie order and carefully tailored the 1968 modification to the terms of a less restrictive order entered against a competitor.

The Commission claims the fact that the Kroger order only requires approval of horizontal mergers is an appropriate outcome of the Kroger case, and the fact that the Winn-Dixie case included market extension mergers made the provision for prior approval of such extensions appropriate. The 1966 agreement, however, makes no distinction between the types of mergers or acquisitions involved but apparently covers any mergers or acquisitions. This issue was clearly analyzed and properly resolved by Commissioner Dennison in his dissenting opinion in this case.

> In the opinion denying modification, great significance is given to the fact that the respective orders were designed in response to entirely different circumstances. *Winn-Dixie* involved a geographic market extention-type merger, while *Kroger* was a straight horizontal acquisition. While this is certainly true, I question the relevancy of this fact and how it would change the outcome dictated by the original consent order.[1] A most

1. [fn. Apparently this distinction failed to impress the Commission at the time of the first modification of the *Winn-Dixie* order to conform to the *Grand Union* order. Docket C–1350, 73 F.T.C. 1050 (1968). The *Grand Union* case involved a *horizontal acquisition.*]

> favored nation provision requires the Commission to modify the Winn-Dixie order where there is a less restrictive order issued in any proceeding involving mergers or acquisitions by a grocery store chain. The provision is not limited to geographic market extension-type mergers nor did the Commission in any way reserve discretion in the matter.

The Commission argues that the Kroger order is not less restrictive than the Winn-Dixie order either on its face or in its operative effect. The question of whether or not it is less restrictive on its face is here resolved by the Court in favor of Winn-Dixie. On the basis of the comparison of the two orders previously made by the Court herein, there can be no doubt that the restrictions on Winn-Dixie which appear on the face of its modified consent order are substantially more burdensome than are the restrictions imposed upon Kroger. The question of whether or not Winn-Dixie's order is less restrictive in its operative effect is the vital argument of this lawsuit, and the Court will now consider that issue.

In its opinion in this case the Commission held that the Kroger order was not less restrictive than the Winn-Dixie order because (1) the Kroger order not only bans future acquisitions, as does the Winn-Dixie order, but also requires divestiture of three food departments leased by Kroger, and (2) Winn-Dixie was charged in the Commission's complaint with essentially geographic market extensions having some horizontal aspects, whereas the complaint charged Kroger with a horizontal merger.

Winn-Dixie concedes that it is not required by the consent order to divest itself of any stores, as was Kroger by the consent order in its case. The Kroger most favored nation clause, unlike the Winn-Dixie agreement, represents the sort of limitation to industrywide principles which the Commission contends should apply here. In Kroger, modification is to occur only in the event a less restrictive *trade regulation rule* is promulgated, whereas in Winn-Dixie modification is to occur whenever a less restrictive *order or rule* is entered. Thus,

the Commission has demonstrated a capacity to negotiate for and write a narrower modification clause if it so desires.

■ The Commission urges the Court to weigh the added burden on Winn-Dixie of seeking prior approval of its initial entry by acquisition into a new geographic market against the onus on Kroger of divestiture of acquired properties in 1971. This method of balancing would require the Court to give the term "restrictive" in the most favored nation clause a retrospective meaning. The fact that Kroger in 1971 was required, as part of a consent order, to take the single action of divesting itself of three leased food departments should not thereafter act to bar Winn-Dixie from enforcing the terms of its agreement. If this interpretation were to be placed on the agreement, Winn-Dixie would be at a competitive disadvantage to Kroger; the very position it sought to prevent by negotiating the most favored nation clause into the agreement in 1966.[8] Therefore, the Court concludes that the divestiture requirement did not cause the Kroger order to become more restrictive than the Winn-Dixie order, and any other conclusion would place Winn-Dixie at a competitive disadvantage to Kroger.

■ Although firms subject to Commission order are generally not entitled to competitively equal treatment, Federal Trade Commission v. Universal-Rundle Corp., 387 U.S. 244, 87 S.Ct. 1622, 18 L.Ed.2d 749 (1967); Moog Industries v. Federal Trade Commission, 355 U.S. 411, 78 S.Ct. 377, 2 L.Ed.2d 370 (1958), the parties in this case provided for a means of assuring equal treatment with regard to mergers and acquisitions of food stores by including the most favored nation clause in their agreement. Winn-Dixie sought to prevent itself from being at a disadvantage when attempting to merge with or acquire another food store or chain. Nevertheless,

the flexible notification provisions available to Kroger, and the fact that Kroger's order only applies in states where it presently does business places Winn-Dixie at a distinct disadvantage.

For example, if Winn-Dixie and Kroger each seek to acquire a food store outside either of their present geographic areas, Kroger may offer to purchase the store immediately, whereas before Winn-Dixie can make an offer to purchase, the Commission must give its approval. Thus, Winn-Dixie cannot bargain with the same swiftness nor certainty as Kroger, and it is not unlikely that a food store or chain owner might be willing to accept a lower price from Kroger for a quickly effected sale rather than wait for Commission approval of an offer from Winn-Dixie. The Commission could later decide to bring an action to set aside the Kroger acquisition of such a store, but merger challenges are based upon a full blown adjudication of issues and the consideration of the record as a whole. Prior approval of acquisitions, in contrast, is based on standards of evidence far less stringent than those applied to adjudication.

■ The Commission contends Winn-Dixie is at no "competitive" disadvantage to Kroger in the states where neither company presently operates food stores, because Kroger by definition is not competing in those areas. Thus, the Commission argues, the prior approval requirement is not a more restrictive provision imposed upon Winn-Dixie than "those imposed upon its competitors", as contemplated by the most favored nation clause. This argument is not persuasive. The fact that neither Winn-Dixie nor Kroger has any stores in a given area at present does not necessarily mean they are not in competition with each other to acquire stores in that area. They may compete, not only in food sales, but also in attempting to acquire food stores.

8. Without the agreement with its most favored nation clause, Winn-Dixie argues, it

would never have consented to entry of the cease and desist order in 1966.

The law is clear that when a consent decree contains a most favored nation clause the courts will enforce it so that one party to it will not be placed at a disadvantage to competitors. Ford Motor Co. v. United States, 335 U.S. 303, 69 S.Ct. 93, 93 L.Ed. 24 (1948); Chrysler Corp. v. United States, 316 U. S. 556, 62 S.Ct. 1146, 86 L.Ed. 1668 (1942). In both *Chrysler* and *Ford* the Supreme Court held that the crucial fact was not the degree of disadvantage, but the persistence of an inequity against which protection has been secured in a well understood and carefully drawn decree. In this case we have such a decree which the Court must enforce.

### (C) *Is Modification Necessary?*

Winn-Dixie does not contend that the order issued against Kroger was inappropriate to deal with Kroger's alleged violation, or that the order issued against Winn-Dixie was inappropriate to deal with its alleged violations. Winn-Dixie only claims that it is entitled to every competitive advantage available to Kroger because it bargained for and won that right when the most favored nation clause was included in the original consent decree.

The plain meaning of this clause must be observed and enforced. The Supreme Court in United States v. Armour & Co., 402 U.S. 673, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971), in holding a consent decree did not prohibit Armour from being acquired by the Greyhound Bus Line, declared,

> [T]he scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it. Because the defendant has, by the decree, waived his right to litigate the issues raised, a right guaranteed to him by the Due Process Clause, the conditions upon which he has given that waiver must be respected, and the instrument must be construed as it is written. . . .

402 U.S. 673 at 682, 91 S.Ct. 1752 at 1757, 29 L.Ed.2d 256.

The essence of Winn-Dixie's argument in support of its position is that the plain language of its consent agreement mandates the requested modifications, and that no other reasonable position can be taken if the Commission stays within the "four corners" of the consent agreement.

In this regard the Court fully agrees with the statement of Commissioner Dennison, in his opinion dissenting from the Commission's order denying Winn-Dixie's petition for reopening and modification.

> The respondent has persuasively argued that the order against the Kroger Company (Docket No. C–2067) is less restrictive than the order against it. This point notwithstanding, the majority would have us look behind the plain reading of the order to determine whether the *Winn-Dixie* and *Kroger* factual situations were substantially similar before invoking the most favored nation provision. Why it is necessary to create a "principle of conformity" and to look at the competitive circumstances giving rise to the respective orders, is unclear. The words employed in the provision are neither unclear nor ambiguous. The clause itself, taken as a whole, is clear in its meaning and its import is patent. Most favored nation provisions have always been strictly construed. Kolopret [Kolovrat] v. Oregon, 266 [366] U.S. 187 [81 S.Ct. 922, 6 L.Ed.2d 218] (1961); Lukrich [Lukich] v. Department of Labor and Industry, 176 Wash. 221, 29 P.2d [388] 288 (1934). However, such provisions have always been construed from the four corners of the agreement. See, Sanprovincenzo [Santovincenzo] v. Eggan [Egan] 284 U.S. 30 [57 S.Ct. 81, 76 L.Ed. 151] (1931); Mentula v. State Land Board, 244 Or. [229] 299, 419 [417] P.2d 581.

Winn-Dixie is presently at a disadvantage to its competitors because an inequality in treatment exists between W–D and Kroger. Not only is this discrimination in treatment of competitors sub-

ject to careful scrutiny, Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957); Hartford Steam Boiler Inspection Ins. Co. v. Harrison, 301 U.S. 459, 57 S.Ct. 838, 81 L.Ed. 1223 (1937); Mayflower Farms v. Ten Eyck, 297 U.S. 266, 56 S.Ct. 457, 80 L.Ed. 675 (1936), but the disadvantage in this case is caused by the failure of one party to adhere to its judicially enforceable agreement.

> Consent orders, agreed to by both the respondent and the Commission, are binding decrees. If the respondent is to be bound, usually at its detriment, then the Commission must likewise be bound; sometimes to its detriment. If the Commission wanted to limit the most favored nation treatment to only geographic market extension cases, it should have insisted upon this narrower language in the consent negotiations. It did not and must now live with the broader language.

In re Winn-Dixie Stores, Inc., F.T.C. Docket No. C–1110 (May 30, 1973), Dissenting Opinion of Commissioner Dennison.

> Since the Kroger order is framed to require prior Commission approval of food store acquisitions by Kroger only in those states or subdivisions where Kroger presently operates such stores or departments, the Winn-Dixie order should be conformed so as to adopt the same approach.

 Therefore, the Court finds that the action of the Commission in denying Winn-Dixie's petition for reopening and modification is arbitrary, capricious and an abuse of discretion. The fact that the Federal Trade Commission held hearings and wrote an opinion with care does not mean its action was not arbitrary and capricious. Just saying a decision is careful does not make it so. Federal Trade Commission v. Crowther, 139 U.S.App.D.C. 137, 430 F.2d 510 (1970). The Court must go behind the Commission action to determine if it is arbitrary and capricious. Greater Boston Television Corp. v. Federal Trade Commission, 143 U.S.App.D.C. 383, 444 F.2d 841 (1970).

The Court further finds that Winn-Dixie is irreparably injured, aggrieved and adversely affected by defendants' action in denying its petition. Unless immediate relief is obtained, plaintiff will be at a severe competitive disadvantage, in direct contravention of the terms of the agreement between it and the Federal Trade Commission.

In summary, the consent order requiring modification is clear on its face. By its actions after Grand Union the Commission has established the proper procedure for complying with the modification provision of the most favored nation clause. The harm to public confidence in consent orders and decrees, which make up the vast majority of settlements in the anti-trust field, will be substantial if the requested modification is denied in contravention of an expressed provision of the order. Furthermore, Winn-Dixie will be at a distinct competitive disadvantage unless and until the arbitrary and capricious action of the Commission in failing to reopen and modify the Winn-Dixie order is remedied.

Therefore, it is

Ordered:

1. Defendants' motion, filed herein January 15, 1974, to dismiss the complaint of Winn-Dixie Stores, Inc., is hereby denied.

2. Stipulation regarding discovery and witnesses, filed herein March 28, 1974, is hereby adopted and confirmed by the Court.

3. By consent of all parties, plaintiff's motion, filed herein January 30, 1974, for advancement of the cause and consolidation of trial on the merits with hearing on application for preliminary injunction, is hereby granted.

4. This memorandum opinion constitutes the Court's findings of fact and conclusions of law; and, it is further

Ordered and adjudged:

That the Federal Trade Commission and its members, Lewis A. Engman,

Paul Rand Dixon, Mary Gardiner Jones, David S. Dennison, Jr., and Mayo J. Thompson, be and hereby are permanently enjoined and restrained from enforcing the order against Winn-Dixie Stores, Inc., in F.T.C. Docket No. C–1110, insofar as that order requires that approval of the Federal Trade Commission be obtained prior to the consummation of any food or grocery store acquisition or merger by plaintiff Winn-Dixie Stores, Inc., in any city or county in which Winn-Dixie is not doing business at the time of such merger or acquisition; and, it is further

Ordered and adjudged:

That the Federal Trade Commission and its aforesaid members be and hereby are permanently enjoined and restrained from enforcing the order against Winn-Dixie in F.T.C. Docket No. C–1110, insofar as that order requires Winn-Dixie Stores, Inc., to notify the defendant Commission of food store mergers or acquisitions on any different schedule than The Kroger Company is required to notify the Federal Trade Commission of mergers or acquisitions under the terms of the order entered in F.T.C. Docket No. C–2067 (October 26, 1971); and, it is further

Ordered and adjudged:

That the Federal Trade Commission and its aforesaid members be and hereby are permanently enjoined and restrained from failing to reopen the proceeding involving Winn-Dixie Stores, Inc., in F.T.C. Docket No. C–1110, and upon such reopening to effect such modifications of the order entered therein as will conform such order to that order entered by the Federal Trade Commission against The Kroger Company in F.T.C. Docket No. C–2067 (October 26, 1971); and, it is further

Ordered and adjudged:

That the action of the Federal Trade Commission and its aforesaid members in denying Winn-Dixie Stores' request for reopening of the proceeding and modification of the order in F.T.C. Docket No. C–1110 was arbitrary, capricious and an abuse of discretion and that plaintiff is entitled to such requested reopening and modification.