Nancy **DUKES**, d/b/a Louisiana Concessions, Plaintiff-Appellant,

v.

The **CITY OF NEW ORLEANS** and Honorable Moon Landrieu, Defendants-Appellees.

No. 73-3979
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Sept. 27, 1974.

---

\* Rule 18, 5 Cir.; *see* Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

Joseph Neves Marcal, III, Gen. Counsel, ACLU of La., New Orleans, La., for plaintiff-appellant.

Blake G. Arata, City Atty., Joel P. Loeffelholz, Asst. City Atty., New Orleans, La., for defendants-appellees.

Before WISDOM, GOLDBERG and GEE, Circuit Judges.

GOLDBERG, Circuit Judge:

Before January, 1972, plaintiff-appellant Nancy Dukes maintained a pushcart business in the Vieux Carre of New Orleans, selling hot dogs, drinks, confections and novelties. Subsequently the New Orleans City Council revised its ordinances, removing hot dog vendors from the list of specifically permitted pushcart enterprises in the Vieux Carre, but simultaneously allowing all licensed vendors who had continuously operated the same such business in the Quarter for eight years prior to January 1, 1972, to continue selling.[1] Since Dukes' operation was only a year old, the effect of this revision was to eliminate her from the Vieux Carre market. The other pushcart hot dog vendor in the Quarter, eight year veteran Lucky Dogs, Inc., was thus left with an apparently unchallengeable monopoly.

■ Dukes brought this action under 28 U.S.C. §§ 2201 & 2202 against the City of New Orleans and its Mayor challenging the application of the revised ordinance's "grandfather clause" to hot dog sellers in the Vieux Carre as a denial of Equal Protection and praying for an injunction and declaratory judgment.[2] Both Dukes and the City moved for summary judgment on the merits of the Constitutional claim. The district court, ruling on the basis of the pleadings, answers to the plaintiff's interrogatories, and uncontested affidavits, found no genuine issue of material fact and entered judgment for the City as a matter of law.

■ We conclude that the court below erred in its application of Equal Protection principles, and thus reverse. New Orleans retains ancestral entitlement to regulate business so as to maintain the charms of the Vieux Carre. But the Equal Protection Clause of the Constitution reaches beyond Canal Street, and lays its heavy hand when unjustified discrimination scars the Quarter's complexion. The City's purpose in revising its ordinance, fair though it be, cannot support its favoring a venerable hot dog dealer with the skins of eight seasons over franks of a more recent vintage.

I

There is no question of the City Council's legitimate authority generally to regulate business conducted on the public streets and sidewalks of the Vieux Carre in order to preserve the appearance and custom valued by the Quarter's residents and attractive to tourists. The sole dispute is whether the Council has exceeded Constitutional bounds in its discriminations regarding which enterprises are to be permitted and which are to be prohibited.

■ The Council's classifications are not drawn upon inherently suspect lines such as race or religion. Nor is the personal interest Dukes seeks to pro-

---

1. New Orleans, La., Ordinance 4822, Apr. 13, 1972, amending Ordinance 828 M.C.S. ch. 46. *See also* Ordinance 4957, Sept. 21, 1972, amending Ordinance 828 M.C.S. ch. 46.

2. Dukes began this action against the predecessor version of the New Orleans ordinance regulating peddling on the public streets and sidewalks of the Vieux Carre, New Orleans, La., Ordinances 4744, May 13, 1971; 4555, May 13, 1971; 4439, Dec. 18, 1970, all amending Ordinance 838 M.C.S. ch. 46. That version prohibited most pushcart sales, but excepted from prohibition the vending of certain items, including hot dogs. Dukes' other sales items, drinks, confections and novelties, were not specifically excepted under the ordinance, however. After the arrest of one of her employees on charges—

later dismissed—of violating the existing ordinance, Dukes initiated this suit challenging the ordinance's discrimination between "similar and comparable businesses" as a denial of Equal Protection. After the revision of the ordinance in 1972, she amended her pleadings to attack the "grandfather clause."

Since the current ordinance permits no pushcart foodstuff vendors in the Quarter, *qua* foodstuff vendors, Dukes appears no longer seriously to press her original attack on discriminations between vendors of different types of goods. In any case, we have no difficulty in concluding that such an Equal Protection claim on Dukes' part could not withstand analysis. *See* McGowan v. Maryland, 1961, 366 U.S. 420–426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393–399.

tect here one of such Constitutional fundamentality as to give rise to a necessity for strict judicial scrutiny in preserving its equal protection. *See, e. g.*, Harper v. Virginia State Bd. of Elections, 1966, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (voting); NAACP v. Button, 1963, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (association); NAACP v. Alabama, 1958, 357 U.S. 449, 78 S.Ct. 1163, 2 L. Ed.2d 1488 (access to courts). Rather here

> [we] deal with economic and social legislation where legislatures have historically drawn lines which we respect against the charge of violation of the Equal Protection Clause if the law be "reasonable, not arbitrary" . . . and bears "a rational relationship to a [permissible] state objective."

Village of Belle Terre v. Boraas, 1974, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797. Under this test the deference to legislative judgment is strong. *See, e. g.*, San Antonio School District v. Rodriguez, 1973, 411 U.S. 1, 17, 40, 93 S.Ct. 1278, 1288, 1300, 36 L.Ed.2d 16, 33, 47; McGowan v. Maryland, 1961, 366 U.S. 420, 425, 81 S.Ct. 1101, 1104, 6 L.Ed.2d 393, 399; Williamson v. Lee Optical, 1955, 348 U.S. 483, 488–489, 75 S.Ct. 461, 464–465, 99 L.Ed. 563, 572–573; Railway Express Agency v. New York, 1949, 336 U.S. 106, 109–110, 69 S.Ct. 463, 465, 93 L.Ed. 533, 538–539. As the Supreme Court restated in Morey v. Doud, 1957, 354 U.S. 457, 463–464, 77 S.Ct. 1344, 1348–1349, 1 L.Ed.2d 1485, 1490, our chief guide in resolving this case,

> "1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because

in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." Lindsley v. Natural Carbonic Gas Co., [1911,] 220 U.S. 61, 78, 79, 31 S.Ct. 337, 340, 341, 55 L.Ed. 369, 377 . . .

 Thus, we view the New Orleans ordinance initially from a traditionally sympathetic perspective. This does not mean, however, that the judicial role of constitutional oversight is to be abdicated. Morey v. Doud also teaches that where the discriminations to be assessed assume an "unusual character," we must exercise "careful consideration to determine whether they are obnoxious" to the Equal Protection Clause. 354 U.S. at 464, 77 S.Ct. at 1349, 1 L.Ed2d at 1490–1491 (quoting Hartford Steam Boiler Inspec. & Ins. Co. v. Harrison, 1937, 301 U.S. 459, 462, 57 S.Ct. 838, 840, 81 L.Ed. 1223, 1226; Louisville Gas & Elec. Co. v. Coleman, 1928, 277 U.S. 32, 37, 48 S. Ct. 423, 425, 72 L.Ed. 770, 774). Finding the "grandfather clause" of the New Orleans ordinance here at issue to be facially "unusual" in its establishment of a closed class of favored enterprises distinguished solely by the length of their tenure as established operations, we proceed to such a "careful consideration."

## II

 In our examination of the nature of the discrimination attacked here, we are guided by two principles consistently reiterated by the Supreme Court. First, "distinctions in the treatment of business entities engaged in the same business activity may be justified by genuinely different characteristics of the business involved. . . . But distinctions cannot be so justified if the 'discrimination has no reasonable rela-

tion to these differences.' Hartford S. B. I. Ins. Co. v. Harrison, [1937,] 301 U.S. 459, 463, [57 S.Ct. 838, 840] 81 L. Ed. 1223, 1226." Morey v. Doud, 354 U.S. at 466, 77 S.Ct. at 1350, 1 L.Ed. 2d at 1492. Second, "[a] classification . . . 'must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' Royster Guano Co. v. Virginia, [1920,] 253 U.S. 412, 415, [40 S.Ct. 560, 561] 64 L. Ed. 989, 990." Reed v. Reed, 1971, 404 U.S. 71, 75–76, 92 S.Ct. 251, 254, 30 L. Ed.2d 225, 229.

▆ A classification · based on tenure may have a legitimate governmental rationale and thus be constitutionally permissible. A zoning ordinance, for example, may be made applicable only to future builders in order to conserve reliance interests. *See* Sampere v. New Orleans, 1928, 166 La. 776, 117 So. 827, aff'd per curiam, 1929, 279 U.S. 812, 49 S.Ct. 262, 73 L.Ed. 971. *Cf.* United States v. Maryland Savings-Share Ins. Corp., 1970, 400 U.S. 4, 91 S.Ct. 16, 27 L.Ed.2d 4. Even a discrimination between established operations based on distinctions in tenure may be proper if rationally connected to a valid legislative purpose. Thus in Watson v. Maryland, 1910, 218 U.S. 173, 30 S.Ct. 644, 54 L. Ed. 987, the Supreme Court upheld a Maryland statute exempting physicians who had practiced in the state for four years from taking a licensing examination, upon the reasonable legislative "theory that those who have acceptably followed the profession in the community for a period of years may be assured to have the qualifications which others are required to manifest as a result of an examination." 218 U.S. at 177, 30 S.Ct. at 646, 54 L.Ed. at 989. *See also* Dent v. West Virginia, 1889, 129 U.S.

114, 9 S.Ct. 231, 32 L.Ed. 623. *Cf.* Eslin v. Collins, Fla.1959, 108 So.2d 889.

▆ The New Orleans ordinance challenged here was enacted as part of a series of measures limiting peddling in the Vieux Carre in accordance with the New Orleans City Council's apparent and reasonable belief that the presence of such distractions inhibits tourism. The Council's asserted purpose in permitting only those vendors who had sustained their operations in the Quarter for eight years to remain was to preserve those least likely to disturb "the unique charm and beauty that is characteristic of the Vieux Carre."[3] While we are sympathetic to New Orleans' efforts to conserve the traditional complexion of the Vieux Carre and sensitive to the difficulty of consistently aligning tradition with purely reasonable distinctions,[4] we nevertheless find the Council's rationale insufficient to support the discrimination imposed.

▆ The pivotal defect here is akin to that exposed by the Supreme Court in Morey v. Doud, *supra.* Under the Illinois statute invalidated there, the American Express Company was exempted from regulatory and licensing requirements imposed on other issuers of money orders in the state, apparently in recognition of its stability and preeminence. The Supreme Court held this rationale insufficient, however, because American Express would "continue to be unregulated whether or not [it] retains its present characteristics." 354 U.S. at 467, 77 S.Ct. at 1351, 1 L.Ed.2d at 1492. Here similarly, the hypothesis that a present eight year veteran of the pushcart hot dog market in the Vieux Carre will continue to operate in a manner more consistent with the traditions of the Quarter than would any other operator is without foundation.[5] There is

---

3. Brief of Appellee at 7.

4. *Cf.* McGowan v. Maryland, 1961, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399; Kotch v. River Port Pilot Comm'rs, 1947, 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093.

5. The line of analysis we adopt here is not at odds with the principle that in assessing economic legislation under challenge as a denial of Equal Protection, we should assume any reasonable set of facts on which the legislature might have based its judgment.

simply no suggestion that eight years' experience in the pushcart hot dog business in the Vieux Carre is necessary or helpful to better hot dog salesmanship, or that it instills in the licensed vendors (or their likely transient operators) the kind of appreciation for the conservation of the Quarter's tradition that would move them to refine their methods of operation.[6]

■■■ Furthermore, the New Orleans ordinance selects a single vendor for special preference,[7] closing the Vieux Carre pushcart foodstuff market to all other operators regardless of how well established or desirable their operations may be or might otherwise become. This factor distinguishes the present matter from Stanley v. Public Util. Comm'n, 1935, 295 U.S. 76, 55 S.Ct. 628, 79 L.Ed. 1311, in which the Supreme Court upheld legislation somewhat similar to that challenged here, but which operated only to limit entry into the regulated field to qualifying applicants, not to bar future entry altogether. There, a 1933 Maine statute required common carriers operating motor vehicles for hire to obtain a certificate of public convenience and necessity, but also provided that such certification was to be granted "as a matter of right" to carriers in continuous operation since March 1, 1932. The Supreme Court's opinion went no further than to sanction such a limited qualification on free entry into the market, holding that in the exercise of its legitimate regulatory powers, "the legislature could determine, within reason, as of what period the service of carriers for hire over its highways did not impair their use or cause congestion, and [could] require certificates for those seeking to supply additional transportation for a later period." 295 U.S. at 78, 55 S.Ct. at 628, 79 L.Ed. at 1313. *Cf.* Watson v. Maryland, 1910, 218 U.S. 173, 30 S.Ct. 644, 54 L.Ed. 987.

■■■ The exclusionary character of the New Orleans ordinance more closely resembles the provisions of the Illinois statute held invalid in Morey v. Doud, *supra*, which imposed economic and organizational burdens [8], above and beyond the requirement of demonstrating public convenience, on competitors of American Express while exempting American Express alone. Of course it is true that not every statute treating uniquely some individual enterprise [9] or some closed class of enterprises [10] is constitutionally objectionable. Nevertheless, the crea-

---

That principle applies only to the assumption of facts in existence at the time of enactment. *See* Lindsley v. Natural Carbonic Gas Co., 1911, 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369, 377, quoted in Morey v. Doud, 354 U.S. at 464, 77 S.Ct. at 1349, 1 L.Ed.2d at 1490.

6. Nor does the challenged ordinance require the eight year veterans permitted to remain in the Vieux Carre to maintain the current appearance or location of their equipment or operations, or their habitual ways of doing business.

7. Unlike the statute invalidated in Morey v. Doud, the New Orleans ordinance does not specify the one enterprise given legislative favor, Lucky Dogs, Inc., by name; here the statutory exemption *is* ostensibly generic. The functional effect of the specific statutory exemption is identical to that encountered in Morey v. Doud, however; it is a matter of public licensing record that Lucky Dogs, Inc., is the only hot dog vendor qualifying under the "grandfather clause" to operate in the Vieux Carre. We see no legal signifi-

cance in the different manner of describing the single favored entity. *See* Cotting v. Godard, 1901, 183 U.S. 79, 114–115, 22 S.Ct. 30, 44, 46 L.Ed. 92, 109–110, cited with approval in Morey v. Doud, 354 U.S. at 467, 77 S.Ct. at 1351, 1 L.Ed.2d at 1492–1493.

8. These included preclusion from selling through retail establishments and the imposition of licensing, surety and insurance costs.

9. *See, e. g.,* Erb v. Morasch, 1900, 177 U.S. 584, 20 S.Ct. 819, 44 L.Ed. 897 (statute exempting named rail line from compliance with limit on train speed in city).

10. In United States v. Maryland Savings-Share Ins. Corp., 1970, 400 U.S. 4, 91 S.Ct. 16, 27 L.Ed.2d 4, for example, the Supreme Court upheld a 1960 federal statute granting tax exemption to existing non-profit corporations engaged in the insurance of savings and loan associations against the equal protection attack of a like corporation chartered in 1962 and denied the exemption. The Court was at some pains to point out,

tion of a protected monopoly for the favored class member is a significant factor to be considered in assessing the nature of the discrimination here. Like Morey v. Doud, "[t]his is not a case in which the Fourteenth Amendment is being invoked to protect a business from the general hazards of competition. The hazards here have their roots in the statutory discrimination." 354 U.S. at 468–469, 77 S.Ct. at 1352, 1 L.Ed.2d at 1493.

We conclude that appellant Dukes has overcome the presumption of constitutionality of the New Orleans ordinance's "grandfather clause" by demonstrating the insubstantiality of the relation between the nature of the discrimination and the legitimate governmental interest in conserving the traditional assets of the Vieux Carre. We need not determine which aspects of the legislative monopoly created here might hypothetically be adjusted to render the ordinance constitutionally inoffensive.[11] It is enough that the sum of the constitutional considerations examined outweighs the legislative presumption, so that we are not driven to balance each individual factor. "Taking all of [the] factors in conjunction——the remote relationship of the statutory classification to the [ordinance's] purpose or to business characteristics, and the creation of a closed class . . .——we hold that the application of the [ordinance] to [appellant] deprives [her] of equal protection of the laws." Morey v. Doud, *supra*, 354 U.S. at 468–469, 77 S.Ct. at 1352, 1 L.Ed.2d at 1493.

We emphasize that our holding does not bar New Orleans from further legitimate attempts to conserve the Vieux Carre's unique resources. The City Fathers might constitutionally enact any of a broad range of measures—for example, strict regulation of the location and appearance of pushcarts—in order to satisfy the same concerns that prompted the ordinance here examined. But such a "grandfather clause" as was enacted could be viable only if paternally genuine; a classificatory statute can withstand constitutional attack only if its classificatory directions are rationally guided. Here the strictly chronological divisions were not. We hold only that the City may not satisfy its proper goals through such arbitrary discriminations.

Finding the ordinance unconstitutional as applied, we reverse the summary judgment for the City entered below. Since the trial court did not find the ordinance's discrimination unconstitutional, it did not consider whether the "grandfather clause" was severable from the ordinance's simultaneous general preclusion of pushcart hot dog vendors from the Quarter, that is, whether the ordinance should be read as a total nullity, or whether it should be read to preclude the operation of all pushcart hot dog dealers in the Vieux Carre. We remand for the district court to resolve this question and enter judgment accordingly.

Reversed and remanded for further proceedings consistent with this opinion.

---

however, that a legitimate and rationally related governmental interest in not extending the exemption had been "affirmatively" demonstrated. *Id.* at 6, 7 n. 2, 91 S.Ct. at 17, 18, 27 L.Ed.2d at 7, 7 n. 2.

11. We likewise specifically decline to consider the constitutionality of the "grandfather clause" as it applies to other categories of enterprise in the Vieux Carre.